IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON GATLIN,

    Plaintiff,

  v.                                                                            No. CV 09-0906 LH/CG

DR. WILLIAM SHANNON,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDS DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Jason Gatlin's *Prisoner Civil Rights' Complaint* ('Complaint') (Doc. 1), and Defendant's *Martinez* report ('*Martinez* report') (Doc. 19). The alleged events giving rise to this lawsuit occurred while Plaintiff was incarcerated at the Metropolitan Detention Center in Albuquerque, New Mexico ('MDC'). (Doc. 1 at 2). Plaintiff claims that he was assaulted in MDC and that Defendant Dr. William Shannon did not provide sufficient medical care, resulting in the disfigurement of Plaintiff's ear, as well as pain and hearing loss. (*Id.* at 2-4). Plaintiff further asserts generally that Defendant did not provide adequate or timely medical care and psychiatric care. (*Id.* at 2-3). As relief, Plaintiff seeks an injunction, compensatory damages, and punitive damages. (*Id.* at 5). In his *Martinez* report, Dr. Shannon claims that Plaintiff has not shown that his constitutional rights were violated. (Doc. 19 at 15-16). Dr. Shannon therefore requests that this Court grant summary judgment and dismiss all of Plaintiff's claims with prejudice. (*Id.* at 16). The Court, having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, **FINDS** that there is no genuine dispute of material facts as to whether Dr. Shannon violated Plaintiff's constitutional rights. Therefore, the Court

**RECOMMENDS** that summary judgment be **GRANTED** in favor of Dr. Shannon on all claims and that the Complaint be **DISMISSED WITH PREJUDICE**.

## I. Background

Plaintiff's Complaint alleges that unnamed Correctional Medical Service ('CMS') staff members failed to provide proper medical care while he was a pre-trial detainee at the MDC in Albuquerque. (Doc. 1 at 1-5). Specifically, Plaintiff alleges claims that the medical staff ignored both his medical and psychiatric needs. (*Id.* at 2). Plaintiff further claims that he was not provided with proper medical care following an injury to his ear while he was incarcerated. (*Id.* at 2, 11). Plaintiff argues that this mistreatment violated both the Fourteenth and Eighth Amendment of the United States Constitution. (*Id.* at 3).

The Complaint further alleged that prisoners were not being properly fed at MDC and that the facility was overcrowded. (*Id.* at 2-4). United States District Judge C. LeRoy Hansen dismissed Plaintiff's claims regarding the crowded conditions and inadequate diet, stating that the general allegations contained in the Complaint were insufficient to establish a constitutional claim. (*See* Doc. 11 at 2). District Judge Hansen also dismissed several other defendants originally named in the Complaint since Plaintiff's pleadings did not affirmatively link any defendants except Dr. Shannon to the denial of medical care. (*Id.*). As a result, Dr. Shannon is the sole defendant in this action and only those claims relating to the denial of medical care are the subject of this Proposed Order.

### A. Plaintiff's Medical Care

Plaintiff was incarcerated as a pre-trial detainee in the Metropolitan Detention Center

on October 27, 2008. (Doc. 19 at 1; Ex. A).[1] CMS staff interviewed Plaintiff regarding his medical history that same day. (Ex. B at 1). During the medical screening, Plaintiff indicated that he suffered from asthma and that he took several prescription medications to treat his asthma. (*Id.*). Plaintiff's also indicated a history of treatment for mental health disorders and the use of antidepressants such as Wellbutrin and Elavil. (Ex. B at 2; Ex. C). CMS then scheduled a mental health screening that same day, and Plaintiff related a history of depression. (Ex. C). CMS arranged for Plaintiff to be seen by the Psychiatric Services Unit ('PSU') the next day. (Ex. E). At the initial PSU screening, Plaintiff again related a history of depression, and further noted a history of aggressive behavior and alcohol and drug abuse. (*Id.*). The PSU screening noted Plaintiff's use of Wellbutrin and Elavil. (*Id.*). The PSU screener listed Plaintiff as having appropriate affect, appearance, and speech, and found no evidence of psychomotor agitation. (*Id.*). As a result, Plaintiff was approved to be placed with the general population. (Ex. F).

Shortly after being placed with the general population of the MDC, Plaintiff began experiencing symptoms of depression and anxiety and he started making frequent requests to be seen at the PSU. (Doc. 19 at 2-3; Ex. H; Ex. I). Plaintiff submitted two requests to be seen at the PSU in November of 2008 and he was taken to the PSU on November 17, 2008, the day after his second request. (*See* Ex. G; Ex. H; Ex. I). Plaintiff claimed that his depression was worsening and that he was crying uncontrollably. (Ex. H; Ex. I). Plaintiff denied any suicidal ideation, and he was returned to general population. (Ex. J). Plaintiff was again seen at PSU two days later, and the CMS staff approved a prescription for Elavil

---

[1] Unless otherwise noted, all cited exhibits are attached to Defendant Shannon's *Martinez* report, Doc. 19.

to help treat the depression. (Ex. K; Ex. L).

Plaintiff continued to make repeated requests to be seen by staff at the PSU. (Ex. N; Ex. Y). Over the next six months, Plaintiff was seen at least six times at the PSU. (*See* Doc. 19 at 3, 5; Ex. M; Ex. O; Ex. Q; Ex. X; Ex. Z; Ex. BB). Each visit related to Plaintiff's ongoing struggles with depression. (Doc. 19 at 3, 5). Relaxation techniques were discussed with Plaintiff and his prescription for Elavil was reviewed several times. (*Id.*; Ex. O; Ex. P; Y; Ex. Z).

Plaintiff's requests for mental health treatment continued and in June of 2009, CMS staff prescribed Klonopin - a medication frequently used to relieve panic attacks - in conjunction with the Elavil. (Ex. BB).[2] Over the next year, Plaintiff continued to make repeated requests for medical care, and he was treated at PSU at least eleven more times before his transfer from MDC on July 21, 2010. (*See* Doc. 19 at 6-14; Ex. BB; Ex. FF; Ex. GG; Ex. LL; Ex. OO; Ex. SS; Ex. JJJ; Ex. KKK; Ex. MMM; Ex. RRR; Ex. EEEE). Plaintiff's prescriptions for Elavil and Klonopin were renewed and the levels adjusted several times. (*See, e.g.*, Ex. CC; Ex. FF; Ex. HH; Ex. LL; Ex. OO; Ex. SS; Ex. WW; Ex. XX).

In addition to the mental health treatment provided by PSU, Plaintiff was treated by CMS medical staff several times for asthma related concerns. (*See* Ex. BBB; Ex. III; Ex. NNN; Ex. WWW; Ex. YYY). Plaintiff further received treatment for assorted illnesses and injuries, including flu symptoms, a rubbery lesion on the side of Plaintiff's neck, and abrasions from being hit by a door. (Ex. MM; Ex. RR; Ex. TT; Ex. VV; Ex. ZZ; Ex. ZZZ). In

---

[2] *See* Mayo Clinic entry for Klonopin (also known as Clonazepam), *available at* http://www.mayoclinic.com/health/drug-information/DR602741. ("[Klonopin] is also used to treat panic disorders in some patients.").

the twenty-two months that Plaintiff spent at MDC, he was seen by CMS medical staff at least thirty times and prescribed at least seven prescription medications to help alleviate his medical concerns. (*See* Doc. 19 at 1-14; Ex. L; Ex. BB; Ex. ZZ; Ex. BBB; Ex. FFF; Ex. QQQ; Ex. SSS).[3]

### B.     Injury to Plaintiff's Ear

On April 5, 2009, Plaintiff was in an altercation with another inmate at MDC wherein Plaintiff was struck on the side of the head with a meal tray. (Doc. 19 at 4). Plaintiff was immediately transported to the University of New Mexico Hospital ('UNMH') emergency room to repair a laceration to Plaintiff's left ear. (*See* Ex. R at 2). The attending physician at UNMH repaired a 5 cm irregular tear to Plaintiff's left ear. (Ex. R. At 4). Between April 5-6, 2009, UNMH performed a PA and Lateral Chest x-ray, as well as a CT Scan of Plaintiff's head. (Ex. S at 1; Ex. T at 1; Ex. U at 1). The chest x-rays did not reveal any pleural effusions and, while the left arm x-rays noted some degenerative change, no fractures or dislocations were found. (Ex. S at 1; Ex. T at 1, 3). The CT head scan revealed an old fracture to the orbital wall on the left side of Plaintiff's face, but no further fractures, hemorrhages, or significant abnormalities. (Ex. U at 1-2). The CT scan did indicate that an amount of fluid had built up in Plaintiff's left sinus. (Ex. R at 2; Ex U at 1-2).

Plaintiff was discharged from the UNMH and returned to MDC on April 6, 2009, with instructions on follow up care for Plaintiff's lacerated ear and a prescription for vicodin. (Doc. 19 at 4; Ex. R. At 3-4). The UNMH discharge papers did not indicate that Plaintiff was scheduled for a follow up visit. (*See* Ex. R at 4 ("JASON GATLIN has been given these

---

[3] This figure does not include any medical care provided by CMS with regard to the ear injury suffered in April of 2009.

follow up instructions: No follow up instructions provided.")). Indeed, there is no indication in any of the UNMH reports that Plaintiff was scheduled to return to UNMH for follow up care of any kind. (Doc. 19 at 4; Ex. R).

On April 21, 2009, Plaintiff filed a formal grievance against the MDC, alleging that he had been told by UNMH staff that he was supposed to return to the hospital within 72 hours of the ear injury to receive plastic surgery. (Doc. 1 at 11; Ex. V). CMS medical staff responded to the grievance by noting that "no [follow up] appt. was requested by UNM[H]." (Ex. V).

On September 4, 2009, Dr. Shannon referred Plaintiff back to UNMH for an ear, nose, and throat evaluation after Plaintiff complained of tinnitus and hearing loss following the April 5 assault. (Doc. 19 at 7; Ex. II).[4] Plaintiff was seen at the UNMH Otolaryngology clinic on October 29, 2009. (*See* Ex. PP at 1). The UNMH staff noted a healing scar on Plaintiff's left ear, and further noted that his right ear canal was blocked by a significant buildup of cerumen - commonly known as earwax. (*Id.* at 2).[5] The left ear canal was completely clear and the tympanic membrane did not appear damaged. (*Id.*). Plaintiff was found to have moderate-to-mild decreased hearing on his left side, though the attending physician stated that, without any prior hearing tests, he could not definitively link the hearing loss to the April 5 trauma. (*Id.* at 3, 5).

---

[4] Tinnitus generally refers to a "noise or ringing in the ears." It usually presents as a symptom of some underlying condition, such as hearing loss or ear injury. *See* Mayo Clinic Definition of tinnitus, *available at http://www.mayoclinic.com/health/tinnitus/DS00365.*

[5] *See* Mayo Clinic definition of Cerumen, *available at http://www.mayoclinic.com/health/earwax-blockage/DS00052.*

## II.  Standard of Review

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact[.]" Fed.R.Civ.P. 56(c)(2). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Affidavits or other evidence offered by the nonmoving party must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmoving party. Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's responsibility to "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *Celotex,* 477 U.S. at 322).

Furthermore, the Court liberally construes Mr. Gatlin's filings because he is a *pro se* plaintiff. Hall *v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, a *pro se* non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hospital,* 221F.3d 1160,1164 (10th Cir. 2000). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion.

### III. Analysis

#### A. Personal Responsibility on Part of the Defendant

As an initial matter, the Court finds that Plaintiff has failed to affirmatively link the sole named defendant - Dr. William Shannon - to the alleged abuses identified in the Complaint. To successfully allege a violation of his constitutional rights pursuant to 42 U.S.C. § 1983, Plaintiff must show that the named defendant was personally responsible for the violation. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). In his Complaint, Plaintiff states that he "was not given sufficient follow up medical care or medication, resulting in hearing loss, pain, disfigurement[,]" without ever referencing Dr. Shannon by name or title. (Doc. 1 at 2). Plaintiff later alleges "gross negligence by staff at the Metropolitan Detention Center. I was not taken for follow up care to the hospital resulting in disfigurement and hearing loss." (*Id.* at 3) However, he fails to state which staff members failed to provide the follow up care. (*Id.*). Plaintiff also states that "[w]e are being neglected by Community Correctional Medical Services by negligent gross indifference. Not being seen in a timely manner. Medicals not being given. Medical issues not addressed at all." (*Id.*). Other than identifying Dr. Shannon as the "director of medical care at M.D.C.[,]" he fails to explain what Dr. Shannon did or did not do to deprive him of necessary medical care.

The *Martinez* report provided by Dr. Shannon does not reflect any connection between Dr. Shannon and the alleged abuses contained in Plaintiff's Complaint. Dr. Shannon states that he only treated Plaintiff once during his incarceration at MDC, and that was for complaints regarding an isolated fever in December of 2009. (Ex. ZZ at 1). Dr. Shannon was never involved in Plaintiff's treatment at the PSU and, while Dr. Shannon did

8

refer Plaintiff to the UNHM Otolaryngology clinic in September of 2009, Dr. Shannon claims that he had no further involvement in the treatment of Plaintiff's damaged ear. (*See* (Doc. 19 at 15-16; Ex. JJJJ). Plaintiff has failed to dispute or controvert that assertion. Indeed, by failing to respond to the *Martinez* report, Plaintiff waived his right to respond and to present evidence controverting the factual narrative provided in the report. *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

Furthermore, the Court notes that Dr. Shannon's status as the director of CMS does not render him liable for any violations committed by CMS staff. Liability under § 1983 may not be based solely on the theory of *respondeat superior* for the actions of staff members supervised by the named defendant. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). For those reasons, the Court finds that Plaintiff has failed to properly allege that Defendant Dr. William Shannon violated his constitutional rights with regard to his ear injury or his medical care.

Finally, even assuming *arguendo* that Dr. Shannon's limited involvement in Plaintiff's care was sufficient to connect him to the mistreatment alleged in the Complaint, the Court finds that Plaintiff has still failed to show that his constitutional rights were violated.

### B. Eighth Amendment Claim

Plaintiff claims that he was not provided with adequate or timely medical care and that he did not receive proper follow up care for the ear injury he received. (Doc. 1 at 2-3). Plaintiff claims that these violations amount to cruel and unusual punishment under the Eighth Amendment. (Doc. 1 at 3).[6] To succeed on his Eighth Amendment claim, Plaintiff

---

[6] Defendant also generally asserts that these failures are a violation of the due process clause of the Fourteenth Amendment. (Doc. 1 at 3). However, the Court will construe Plaintiff's

9

must establish that Defendant acted with "deliberate indifference to [his] serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Court finds that, even if Plaintiff had shown that Dr. Shannon was personally involved in treating Plaintiff, Plaintiff has failed to establish that this treatment reflected deliberate indifference to his serious medical needs.

Prisoners are forced to rely on prison authorities to access medical care, and so prison authorities have an affirmative obligation to provide adequate medical care to inmates. *Ramos v. Lamm*, 83 F.3d 559, 574 (10th Cir. 1980). Because of that duty, inadequate, delayed or denied medical treatment may constitute a violation of the prisoner's Eighth Amendment rights. *Estelle*, 429 U.S. at 103. However, not all claims that a prisoner received inadequate care establish constitutional violations. *Id.* at 105. Rather, Plaintiff must demonstrate that the prison officials exhibited deliberate indifference to his serious medical needs. *Ramos*, 83 F.3d at 575 (citing *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)).

To establish that prison officials were deliberately indifferent to his serious medical needs, Plaintiff must establish both the objective and subjective components of his Eighth Amendment claim. The objective component of a 'deliberate indifference' claim is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A

---

claims under the Eighth Amendment jurisprudence since the denial of medical care in a prison context directly implicates the Eighth Amendment's guarantee against cruel and unusual punishment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citations and quotations omitted); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citations omitted). To prevail on the subjective component, Plaintiff must show "that the defendants knew he faced a substantial risk of harm and disregarded that risk . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (internal citations omitted). Mere negligence by prison officials or medical staff will not suffice to meet the subjective prong of deliberate indifference. *Estelle*, 429 U.S. at 105-06; *Ramos*, 639 F.2d at 575. On the other hand, deliberate indifference may exist where officials prevent an inmate from receiving recommended treatment or deny an inmate access to medical personnel capable of evaluating the inmate for needed treatment. *Ramos*, 639 F.2d at 575 (citing *Inmates of Allegheny Cnty. Jail v. Pearce*, 612 F.2d 754, 762 (3d Cir. 1979); *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)).

      **i.**    **Medical and Psychiatric Care**

With regard to Plaintiff's generalized complaints about his access to medical and psychiatric care, the Court notes that asthma and depression can be considered serious medical needs. However, Plaintiff has not made any effort to establish that the purportedly inadequate care provided to him caused him substantial harm. For that reason, he has failed the objective prong of the deliberate indifference test. *Sandifer v. Green*, 126 F.App'x 908, 911 (10th Cir. 2005).

In addition, the Court finds that the evidence presented by Dr. Shannon clearly

establishes that there is no genuine dispute of material fact with regard to the subjective prong of the Eighth Amendment test. From the date that Plaintiff was incarcerated, he was seen at least thirty times by CMS staff. (Doc. 19 at 1-14). During that time he was prescribed at least seven different medications to help alleviate his various ailments. (Ex. L; Ex. BB; Ex. ZZ; Ex. BBB; Ex. FFF; Ex. QQQ; Ex. SSS; Ex. IIII). Plaintiff was typically seen by CMS medical staff within several days of his requesting a medical appointment. (*See, e.g.*, Doc. 19 at 2-3 ("On November 16, 2008, Plaintiff requested to be seen regarding medication and for complaints of depression and anxiety . . . On November 17,2008, plaintiff was seen in the PSU . . . On February 1, 2009, plaintiff requested to be seen regarding a medication change . . . on February 4, 2009, Plaintiff was seen in the PSU.")). Rather than showing that Dr. Shannon and CMS disregarded a substantial risk of harm to Plaintiff, the *Martinez* report demonstrates that the medical staff at MDC were very responsive to Plaintiff's medical needs. For that reason, the Court finds that Dr. Shannon is entitled to summary judgment.

### ii. Ear Injury

Plaintiff claims that Defendant failed to provide proper follow up care after his ear injury. The Court finds that Plaintiff has failed to establish a genuine dispute of material fact with regard to either the objective or subjective prong of the deliberate indifference test.

There is no dispute that Plaintiff was sent to the UNMH on the day that Plaintiff was injured. (Doc. 19 at 4; Ex. R). Therefore, to establish the objective prong of his claim, Plaintiff must allege that the delay between his initial hospitalization and his follow-up appointment at the Otolaryngology clinic five months later resulted in substantial harm. *See, e.g.*, *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care

only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993) (same). Plaintiff has failed to make such a showing.

Plaintiff claims that UNMH staff directed the prison to bring Plaintiff back to the hospital within three days of the injury so that he could receive plastic surgery. (Doc. 1 at 11). Plaintiff further asserts that the failure to bring him back to UNMH for follow up care resulted in "disfigurement and hearing loss." (*Id.* at 3). However, none of the UNMH medical reports contained in the *Martinez* report state that Plaintiff was directed to return to UNMH for follow up care or that he was supposed to receive plastic surgery. (Doc. 19 at 4; Ex. R at 4). Therefore Plaintiff has failed to establish that the purported delay in returning Plaintiff to UNMH caused either the disfigurement or hearing loss. Indeed, the treating doctor at the UNMH Otolaryngology clinic stated that he was unsure whether the April 5 assault was the cause of the hearing loss at all. (Ex. PP at 3, 5). Plaintiff has therefore failed to establish any genuine dispute of material fact with regard to the objective prong of his deliberate indifference claim.

Similarly, the Court finds that Defendant is entitled to summary judgment because Plaintiff has failed to establish the subjective prong of his deliberate indifference claim. Plaintiff has not shown that Dr. Shannon "knew [that Plaintiff] faced a substantial risk of harm and disregarded that risk" when he delayed referring Plaintiff back to UNMH for several months. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citations omitted). The UNMH staff never indicated that Plaintiff was a candidate for plastic surgery, and there is no evidence in the record which reflects when Plaintiff began complaining of hearing loss and tinnitus in his left ear. The only evidence in the record is that Dr. Shannon referred

Plaintiff to the Otolaryngology clinic after Plaintiff complained of both conditions. (Doc. 19 at 7; Ex. II). Plaintiff has failed to allege any disputed issues of material fact regarding the timing or motivation of Dr. Shannon's decision to send Plaintiff back to UNMH. For that reason, the Court finds that Dr. Shannon is entitled to summary judgment.

## IV.     Recommendation

For the reasons set forth in this Proposed Findings and Recommended Disposition, the Court **RECOMMENDS** that Dr. Shannon's request for summary judgment be **GRANTED** and that the Plaintiff's *Prisoner Civil Rights' Complaint,* (Doc. 1), be **DISMISSED WITH PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE